# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | | |
|---|---|---|
| NORTHLAND CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-01275-SJ-CV-DGK |
| | ) | |
| T-N-T RANCH AND RODEO | ) | |
| COMPANY, LLC, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is a declaratory judgment action relating to the coverage of an insurance policy issued by Plaintiff Northland Casualty Company to former Defendant T-N-T Ranch and Rodeo Co., LLC.

Pending before the Court are cross-motions for summary judgment on behalf of Plaintiff Northland Casualty Company and Defendants Vanessa Erskine, Lloyd Erskine, III, and Diane Erskin.[1] Having fully considered the parties' arguments, the Court GRANTS Plaintiff's motion for summary judgment (Doc. 27) and DENIES Defendant's motion for summary judgment (Doc. 25).

---

[1] In ruling on these motions, the Court has also considered Docs. 26, 27, 28, 29, 32, 33, and 34.

1

**Background**

The following facts are undisputed.

I. **The Accident**

Defendant Vanessa Erskine is the daughter of Defendants Lloyd and Diane Erskine (collectively "the Erskines"). On April 30, 2011, Vanessa Erskine, a then minor,[2] sustained extensive injuries from a rodeo accident ("the Accident").[3] Former Defendant T-N-T Ranch and Rodeo Co., LLC ("TNT") participated in organizing the rodeo event, including supplying animals and personnel. Terry Moreland ("Moreland"), a former defendant in this lawsuit, organized the event on TNT's behalf.

II. **TNT's Insurance Policy**

At the time of the accident, TNT owned a general liability commercial insurance policy ("the Policy") issued by Plaintiff Northland Casualty Company ("Northland"). The Policy has an "Each Occurrence" liability limit of $1,000,000 and a "General Aggregate" liability limit of $2,000,000 (Doc. 28-4, at 0003).

Under "Coverage A,"[4] the Policy provides insurance due to "bodily injury" and "property damage":

> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking

---

[2] Vanessa Erskine was under the age of eighteen at the time of the Accident. She has since turned eighteen.
[3] A bull attacked Vanessa Erskine while she was in the rodeo ring.
[4] The coverage at issue here is that provided under the "Coverage A" section. However, the Policy also provides coverage in two other areas. Under "Coverage B," the Policy provides insurance due to personal and advertising injury. *Id*. at 0019. Under "Coverage C," the Policy provides insurance for medical expenses due to bodily injury caused by an accident, subject to certain restrictions. *Id*. at 0021. Because the parties do not contest coverage under "Coverage B" or "Coverage C," the Court does not address those here.

> > those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
> >
> > > **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
> > >
> > > **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
> >
> > No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
> >
> > ….
> >
> > **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

*Id.* at 0015.

The Policy defines the terms "bodily injury" and "occurrence" as follows:

> ….
>
> **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from these at any time.
>
> ….
>
> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Id.* at 0026, 0028.

As amended by Endorsement S267-CG, the Policy provides the following limits on recovery:

3

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

….

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all:[5]

   a. Damages under Coverage **A** because of all "bodily injury" and "property damage"; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

….

*Id.* at 0023-0024, 0036.

---

[5] Paragraph 5 of Section III of the Policy is amended by Endorsement S267-CG (Doc. 28-4, at 0036), which differs from the original language of Paragraph 5 of Section III cited by Defendants at Section III(A) of their Motion for Summary Judgment (Doc. 25, at 7).

### III. The Litigation

On October 20, 2011, Vanessa Erskine, by her next friend Lloyd Erskine, sued TNT and others in the Circuit Court of Dekalb County, Missouri to recover for injuries sustained during the Accident ("the Damages Action"). *Vanessa M. Erskine v. T-N-T Ranch & Rodeo Co.,* No. 11DK-CC0142. As part of the Damages Action, Lloyd and Diane Erskine asserted a claim for medical expenses arising out of their daughter's injuries.

Northland filed the instant claim to resolve questions about the Policy's coverage. Subsequent to filing, the parties reached a partial settlement in both the Damages Action and this case in which Northland paid $1,000,000 to Vanessa Erskine and the Erskines released their claims against TNT and Moreland. Lloyd and Diane Erskine then submitted an additional claim to cover the $602,012.94 in costs they incurred due to their daughter's medical expenses.

**Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must evaluate the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248.

## Discussion

The facts of this case are, for the most part, undisputed. The parties do not dispute that there was one accident. Nor do they dispute that the accident necessitated Vanessa Erskine's medical expenditures, deriving from "bodily injury," that the Erskines now seek to recover. Rather, the issue before the Court is one of contract interpretation: whether Lloyd and Diane Erskine's recovery under the Policy is subject to the "Each Occurrence" liability limit of $1,000,000 or the "General Aggregate" liability limit of $2,000,000. Because resolving this contract dispute is purely a question of law, this case is ripe for summary judgment. *McCormack Baron Mgmt. Servs. Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. banc 1999).

Northland contends that the Policy's "Each Occurrence" damages cap limits its liability for all injuries sustained from the Accident; thus Northland's payment of $1,000,000 fully satisfies all of the Erskine's claims arising out of Vanessa Erskine's injuries, including her parents' claim for damages and medical expenses. Lloyd and Diane Erskine, on the other hand, maintain that their claim for medical damages is separate and distinct from their daughter's claim, and that, therefore, the Policy provides a second $1,000,000 liability limit for their damages. Specifically, they argue that because medical expenses are not listed in the Coverage A, "Insuring Agreement," Section 1(e)'s description of damages, the $1,000,000 "Each Occurrence" limit does not apply.

I. **The Policy unambiguously provides a single $1,000,000 limit of liability for all claims arising out of the Accident, including Lloyd and Diane Erskine's claim for medical damages.**

The parties' dispute is whether medical expenses are covered under the Policy's "Each Occurrence" limit of Coverage A. Plaintiff argues that the Erskine's claim for medical damages is clearly encompassed within the $1,000,000 "Each Occurrence" limit. Defendants argue the Policy is ambiguous with regard to whether medical expenses are covered, and, therefore, the ambiguity must be construed in favor of the insured. Thus, the central question in this case is "whether the contract language is ambiguous or unambiguous." *Peters v. Employers Mut. Cas. Co.,* 853 S.W.2d 300, 301–02 (Mo. banc 1993).

**A. Missouri law requires courts to enforce insurance policies if the language is clear and unambiguous.**

Under Missouri law,[6] if the language in an insurance policy is "clear and unambiguous," the court must construe and enforce the policy as written. *Gavan v. Bituminous Cas. Corp.,* 242 S.W.3d 718, 720 (Mo. banc 2008). Where an insurance policy is ambiguous, the court must interpret the policy in favor of the insured. *Bellamy v. Pacific Mut. Life Ins. Co.*, 651 S.W.2d 490, 496 (Mo. banc 1983); *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008).

"Whether an insurance policy is ambiguous is a question of law." *Martin v. U.S. Fid. & Guar. Co.,* 996 S.W.2d 506, 508 (Mo. banc 1999). In making this determination, the policy provisions should be read in the context of the policy as a whole, and the language should be given its ordinary meaning, "unless another meaning is plainly intended." *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc 1998). An ambiguity exists only if the term is

---

[6] The parties agree that Missouri law governs here. All defendants reside in Missouri; the Policy was issued in Missouri; and the accident occurred in Missouri. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 70-71 (1938).

"reasonably open to different constructions," meaning that in the relevant factual circumstances there is "duplicity," "indistinctness," or "uncertainty" in the language of the policy. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007); *Martin*, 996 S.W.2d at 508.

Language in both the printed policy form and an endorsement must be considered to resolve the issue here. An "insurance contract includes the form policy, the declarations, and any endorsements and definitions," and "[t]he terms and conditions of the policy are modified and altered to the extent called for by the endorsement." *Grable v. Atl. Cas. Ins. Co.*, 280 S.W.3d 104, 107-08 (Mo. Ct. App. 2009). "If the language of the endorsement and the general provisions of the policy conflict, the endorsement will prevail, and the policy remains in effect as altered by the endorsement." *Id.* at 108 (*quoting Abco Tank & Mfg. Co. v. Fed. Ins. Co.,* 550 S.W.2d 193, 198 (Mo. banc 1977)).

### B. The language of the Policy is unambiguous.

Defendants' argument is as follows:

> The Insurance Policy states that "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'...." "Bodily Injury" is defined by the Insurance Policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time". "Bodily injury" includes "damages claimed by any person or organization for care*,* loss of services or death resulting at any time from the 'bodily injury[.'"] The Insurance Policy further states that the most that will be paid is $1,000,000.00 for all "bodily injury" claims arising out of any one "occurrence[."] Since the Defendants Lloyd C. Erskine, III's and Diane Erskine's claim for medical expenses is not included in the definitions of bodily injury, the Insurance Policy is ambiguous regarding damages ... and therefore, the Insurance Policy must be construed against the Plaintiff Northland in favor of Defendants Lloyd C. Erskine, III and Diane Erskine, and they should be provided coverage for their separate claim for medical expenses with the limit of $1,000,000.00 subject to the $2,000,000.00 aggregate limit.

8

Doc. 26, at 5.  The crux of Defendants' argument is that because the description of "damages for bodily injury" does not explicitly include medical expenditures, their claim for medical expenses is not subject to the $1,000,000 "Each Occurrence" limit.  Although the description of "damages for bodily injury" includes "damages claimed by any person for care," Defendant maintains that "care" does not include medical expenditures.  Thus, the Policy language is ambiguous and must be construed in their favor.

Plaintiff, on the other hand, argues that the Policy language clearly encompasses all claims resulting from a single accident into the $1,000,000 "Each Occurrence" limit (Doc. 28, at 9).  The Policy defines "occurrence" as "an accident" and provides coverage for "damages because of 'bodily' injury' . . . caused by an 'occurrence.'"  Vanessa Erskine asserted a claim for her bodily injury, and her parents asserted a claim for medical expenses incurred for her care.  Both claims arise out of the same occurrence—the Accident, and the Policy makes clear that all these damages come within the "Each Occurrence" limit regardless of the fact that multiple parties made multiple claims.

Defendants' argument is insufficient to show that the Policy language is ambiguous.  An undefined term does not, without more, create an ambiguity in the policy.  Rather, "when interpreting language of an insurance policy that is not defined, courts must give a term its ordinary meaning unless it plainly appears that a technical meaning was intended. The ordinary meaning of a term is that which an average layperson would reasonably understand." *Mansion Hills Condo. Ass'n v. Am. Fam. Mut. Ins. Co.*, 62 S.W.3d 633, 638 (Mo. Ct. App. 2001).  An ambiguity exists only "when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010).

Here, the term "care" is not defined. As Defendants note, Northland could have avoided any question of interpretation by including medical expenses after the word "care." However, doing so would have required Northland to specify every instance in which "care" is compensable. It is clear from the Policy that Northland chose not to do this, instead choosing the broad term "care" to encompass the vast variety of expenses incurred as the result of an accident.

Thus, the Court must determine if the term "care" is duplicitous, indistinct, or uncertain, such that it creates an ambiguity in the Policy. First, the Court considers whether there is an alternate reading of "care" that excludes medical expenses. *See Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v. Maune*, 277 S.W.3d 754, 759 (Mo. Ct. App. 2009) (finding that to establish ambiguity under Missouri law, the party asserting the ambiguity must present a reasonable, alternate reading of the allegedly ambiguous language). Here, Defendants assert that a reasonable interpretation of "care" could include "care in the home," "care in taking to school," or "sitting with someone," but "could not mean or include medical expenses" (Doc. 26, at 6). Despite this conclusory assertion, Defendants provide no rationale supporting their contention, and the Court struggles to distinguish how a layperson would interpret "care" to apply to services in the home or school but not to apply to medical services.

Relatedly, the Court considers the ordinary meaning of the term "care" and how a layperson would interpret it. Again, the Court finds that Defendants' interpretation of "care," to include services that are not generally compensable (sitting with someone at home, taking someone to school, etc.) but to exclude monetarily compensable services such as medical expenses, is illogical. *Mansion Hills*, 62 S.W.2d at 638. Considering the requirement to interpret policy language according to its ordinary meaning, the Court finds that medical

expenses are "care" as the average layperson would understand the term. Accordingly, the Policy language is not ambiguous.

### C. Caselaw supports Plaintiff's position that Lloyd and Diane Erskine's claims for medical expenses are subject to the $1,000,000 "Each Occurrence" limit.

Defendants liken this case to the Missouri Supreme Court case, *Cano v. Travelers Ins. Co.*, 656 S.W.2d 266 (Mo. 1983), where a husband (Jesse) and wife (Joyce) sued an insurer to recover for Jesse's injuries sustained in an automobile accident and for Joyce's loss of consortium. *Id*. Jesse obtained a $50,000 judgment for his injuries, and Joyce obtained a $10,000 judgment for her loss of consortium under an insurance policy that stated: "The limit of liability stated in the declarations [as] applicable to "each person" is the limit of [the insurer's] liability for all damages because of bodily injury sustained by one person as a result of any one accident." *Id*. at 268. In finding that the policy language was ambiguous such that both Jesse and Joyce should be allowed to recover, the Missouri Supreme Court wrote the following:

> The Court of Appeals held ... that the policy provisions which limit the insurance company's liability to a total of $10,000 for "all damages because of bodily injury sustained by any one person as a result of any one accident" mean that Jesse, for his personal injuries, and Joyce, for loss of consortium, may not recover together more than $10,000 on account of the accident for which they recovered judgments. We do not agree.
>
> There is a problem of interpretation in the policy language just quoted. If the participle "sustained" is read as referring to "damages" then Joyce's damages, as well as Jesse's, would be covered, inasmuch as a person entitled to damages on account of bodily injury to another is explicitly named as an insured in the policy. If "sustained" is to be read as modifying "bodily injuries," then the conclusion of the Court of Appeals would be correct. It is not unusual to speak both of "damages sustained" and of "injuries sustained." One circumstance is that the participle is closer to "injuries" than it is to "damages." This might indicate that it modifies the nearest noun. But this circumstance is not a very strong one, especially when one considers that Joyce is clearly

> within the third "insured" classification of the policy and that a limiting construction might dilute or eliminate any effective coverage for persons in her position. A construction which may render a portion of the policy illusory should not be indulged in.
>
> We conclude that there is an ambiguity which should be resolved against the insurer.... We hold ... that Joyce is entitled to recover $10,000 of uninsured motorist benefits, in addition to Jesse's entitlement.

*Id.* at 271.

The language of the Policy at issue here is distinguishable from that in *Cano* in one important respect. The syntax ambiguity in *Cano* is not present here. In *Cano*, the language stated that the "each person" limit applies to "all damages because of bodily injury sustained by one person as a result of any one accident." Sustained could modify "all damages" (in which case the damages of both the primary party and the secondary party would be compensable) or it could refer to "bodily injury" (in which case only the primary party could recover). Here, the Policy language contains no similar syntax ambiguity. The Policy provides that the "Each Occurrence" limit applies to all "damages under Coverage A because of all 'bodily injury'… arising out of any one 'occurrence.'" Defendants' argument that the term "bodily injury" does not include medical expenses, is a very different issue from that present in *Cano*.

The Missouri Supreme Court has repeatedly refused to apply or extend *Cano* where the contested policy language differs from the ambiguous provisions in *Cano*. *See Lair v. Am. Fam. Mut. Ins. Co.*, 789 S.W.2d 30 (Mo. banc 1990);[7] *Peters v. Farmers Ins. Co.*, 726 S.W.2d 749

---

[7] "[In *Cano* ] the Court held the language, '[t]he limit of liability stated in the declarations [as] applicable to 'each person' is the limit of [the insurer's] liability for all damages because of bodily injury sustained by one person as a result of any one accident ...' was ambiguous. . . . The ambiguity resulted because the grammatical arrangement of the sentence allowed the participle 'sustained' to modify either the phrase 'all damages' (thus applying to bodily and non-bodily injuries) or the phrase "bodily injuries" (in which case non-bodily injuries would be excluded). The case *sub judice* presents no such problems of syntax. The words, '[t]he limit for 'each person' is the maximum for bodily injury sustained by a person in any one accident' are unambiguous, as the participle 'sustained' can only modify 'bodily injury,' hence the policy's language belies the claim of ambiguity." *Lair*, 789 S.W.2d at 34.

(Mo. 1987);[8] *see also U.S. Fid. & Guar. Co. v. Safeco Ins. Co. of Am.*, 522 S.W.2d 809 (Mo. 1975). These cases are evaluated thoroughly by the Missouri Court of Appeals in *Eaves v. Boswell*, 852 S.W.2d 353 (Mo. Ct. App. 1993), and the issue here is nearly identical to the one considered in that case.

The policy in *Eaves* provided coverage on an "each person/each accident" basis. *Id*. at 354. Specifically, the policy stated: "The bodily injury liability limit for each person is the maximum for all damages, *including damages for care and loss of services arising out of bodily injury*, sickness or disease, including death, suffered by any one person in any one accident." *Id*. at 354 (emphasis added). Similar to Defendants here, the plaintiffs in *Eaves* argued that the policy provided one limit for the minor's primary claims and a separate limit for the parents' derivative claims for medical bills and loss of services. *Id*.

The *Eaves* court disagreed, finding that the policy language was unambiguous "and place[d] a $25,000 cap on [the insurer's] liability for all damages, in the aggregate, arising out of the bodily injury suffered by [the minor], including [the minor's] claim and [the parents'] derivative claim for the *expenses of [the minor's] medical care and loss of her services and earnings*." *Id*. at 358-59 (emphasis added). Thus, the court expressly held that the language "all damages, including damages for care and loss of services arising out of bodily injury" included the parents' claim for medical expenses. *Id*.; *see also Killpack v. Farm Bureau Town & Country Ins. Co.*, 861 S.W.2d 608, 613 (Mo. Ct. App. 1993) ("Like *Eaves* and *United States Fidelity & Guar. Co.*, the Farm Bureau language at issue in the case at bar refers to 'all damages . . .

---

[8] "The [provision at issue] bears a superficial resemblance to the language which we found ambiguous in *Cano,* but there is a significant difference. In *Cano,* the policy referred to 'damages because of bodily injury sustained by one person.' We held that 'sustained' could be read as applying either to 'damages' or to 'bodily injury,' and opted for the construction favorable to the insured. The present language reads, 'damages to the insured because of bodily injury sustained by the insured.' This language does not admit of the *Cano* construction, and imposes no obstacle to the application of the limits of liability clause." *Peters*, 726 S.W.2d at 751-52.

13

including damages for loss of service or consortium.' We find this language unambiguous in limiting *all claims, direct or consequential*, to the policy limit for one person.").

The policy phrases in both *Eaves* and *Killpack* are strikingly similar to the language at issue in the Policy here. Accordingly, the Court holds that no ambiguity exists.

**Conclusion**

Defendants have failed to show that the Policy language is ambiguous. Thus, the Court cannot find that the $1,000,000 "Each Occurrence" limit applies only to Vanessa Erskine's claim for bodily injury and not to her parents' derivative claim for medical expenses. Conversely, Plaintiff has shown that the Policy's "Each Occurrence" limit applies to Lloyd and Diane Erskine's medical expense claim. Accordingly, the Court denies Defendants' motion for summary judgment and grants Plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**

Date: June 24, 2013         /s/ Greg Kays
                            GREG KAYS, JUDGE
                            UNITED STATES DISTRICT COURT